IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HILLTOP HOLDINGS INC. § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> AIG SPECIALTY INSURANCE COMPANY § <br> § <br> Defendant. § | CIVIL ACTION NO. 3:22-CV-907-S |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Hilltop Holdings Inc. ("Hilltop") files this Second Amended Complaint against Defendant AIG Specialty Insurance Company ("AIG") as follows:

## I.    INTRODUCTION

1. Hilltop's subsidiary, PlainsCapital Bank[1], currently is defending claims of fraud, misrepresentation and alleged violations of certain Louisiana statutes in two different lawsuits titled *PlainsCapital Bank v. FR III Funding*, et al., Cause No. DC-16-07601, pending in the 134th District Court of Dallas County ("Guarantors Lawsuit") and *Byrum W. Teekell, et al v. David D. deBerardinis* et al., No. 599,295 A, pending in the First Judicial District Court of Caddo Parish, Louisiana ("Teekell Lawsuit").

2. Hilltop timely made a claim for defense and indemnity related to the Guarantors Lawsuit and Teekell Lawsuit under its insurance policy issued by AIG. AIG refuses to pay for covered defense costs incurred by Hilltop.

3. Hilltop sues AIG for breach of contract to recover the unpaid defense expenses and

---

[1] PlainsCapital Bank is a wholly owned subsidiary of PlainsCapital Corporation. On November 30, 2012, Hilltop Holdings Inc. acquired PlainsCapital Corporation and all of its subsidiaries, including PlainsCapital Bank.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                                                Page 1

costs it has paid, as well as to recover its reasonable and necessary attorneys' fees, statutory damages, and interest.

## II. PARTIES

4. Plaintiff Hilltop Holdings Inc. is a Maryland Corporation with its principal place of business in Dallas County, Texas.

5. Defendant AIG Specialty Insurance Company is a surplus lines carrier eligible to engage in business in Texas. It is also an Illinois corporation with its principal place of business in Illinois. AIG has contractually consented to the jurisdiction of Texas courts in this action. AIG has previously made an appearance in this case.

6. AIG is authorized to conduct business in the State of Texas.

## III. JURISDICTION

7. Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court therefore has jurisdiction over the lawsuit pursuant to 28 U.S.C. §1332(a).

## IV. VENUE

8. Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Hilltop's claims occurred in this district.

## V. CONDITIONS PRECEDENT

9. All conditions precedent set forth in the applicable insurance contracts have been performed or have occurred, as required by Fed. R. Civ. P. 9(c).

## VI. POLICY AT ISSUE

10. AIG issued Bankers Professional Edge for Portfolio Select Policy No. 01-188-84-66 (the "Policy") to Hilltop.

11. The Policy provides coverage up to $10,000,000 for the Bankers Edge Bankers Professional Liability Coverage Section (the "BPL Coverage Section").

12. The Policy has a Policy Period of February 28, 2016, to February 28, 2017.

13. Hilltop paid a premium of $389,400 for the Policy.

14. The BPL Coverage Section provides coverage for Loss of any Insured that arises from any Claim first made against such Insured during the Policy Period for any Wrongful Act of the Insured in the rendering of or failure to render Professional Services. Loss includes, but is not limited to, Defense Costs.

15. The BPL Coverage Section contains the following applicable definitions:

Insured means "(1) any Insured Person; or (2) an Organization."

Insured Person means "any past, present or future partner, director, officer, managing member, board of managers, trustee, committee member or employee of an Organization, or foreign equivalent titles of an Organization, but in all cases only while acting in the scope of his or her duties as such."

Organization means "(1) the Named Entity; and (2) each Subsidiary."

Subsidiary means "(1) any for-profit entity which the Named Entity has or had Management Control on or before the Inception Date of this policy either directly or indirectly through one or more of its other Subsidiaries; and (2) any not-for-profit entity sponsored exclusively by an Organization. A for-profit entity ceases to be a Subsidiary when the Named Entity no longer maintains Management control of such entity either directly or indirectly through one or more of its Subsidiaries. A not-for-profit entity ceases to be a Subsidiary when such entity is no longer sponsored exclusively by an Organization."

16. The BPL Coverage Section of the Policy defines Defense Costs as:

"… reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds. Defense Costs shall not include the compensation of any Insured

Person."

17. The BPL Coverage Section is subject to a self-insured retention of $750,000 ("Retention").

18. The Policy requires AIG to advance covered Defense Cost, in excess of the Retention, on a current basis, but no later than ninety (90) days after AIG receives the itemized bills.

## VII. FACTUAL ALLEGATIONS

**Underlying Lawsuits**

19. On June 23, 2016, PlainsCapital Bank ("PCB") initiated the Guarantors Lawsuit against David deBerardinis ("deBerardinis"), FR III Funding, LLC ("FR III"), a deBerardinis owned entity, and several individuals including Jerry Webb, Craig Webb, Patrick Mulligan, and Stephen Herbel (collectively, the "Guarantors") to recover amounts owed under a loan and to enforce certain guaranty agreements signed by the Guarantors.

20. On July 25, 2016, the Guarantors filed their answer and several affirmative defenses including fraud, negligence, and misrepresentation.

21. On May 19, 2017, the Guarantors filed counterclaims against PCB alleging PCB fraudulently induced them into signing the guaranty agreements at issue and that PCB failed to perform sufficient due diligence for the loan in question. Specifically, the Guarantors assert claims for fraud by omission, fraud by non-disclosure, aiding and abetting, fraudulent inducement, negligent misrepresentation, and negligent misrepresentation by omission. PCB denies these allegations.

22. On August 30, 2019, PCB and Sam Wooten, a former employee of PCB, were named as defendants in the Teekell Lawsuit. Plaintiffs in the Teekell Lawsuit assert that deBerardinis orchestrated a fraudulent scheme to defraud Plaintiffs and that PCB, as well as Sam

Wooten, assisted deBerardinis in furthering deBerardinis' illegal enterprise. Specifically, Plaintiffs assert claims for violations of the Louisiana Racketeering Act and Louisiana Securities Laws and fraudulent misrepresentation. PCB also denies the allegations in the Teekell Lawsuit.

23. PCB and Sam Wooten are Insureds as defined by the BPL Coverage Section of the Policy.

**Claims Handling**

24. On August 2, 2016, a Notice of Claim was submitted to AIG for the Guarantors Lawsuit. Shortly thereafter, AIG hired coverage counsel to assist in the coverage analysis and collaborate with the adjuster to draft coverage correspondence.

25. AIG acknowledged receipt of the claim for the Guarantors Lawsuit by letter dated November 15, 2016. AIG states in the letter that it has reviewed a copy of the Policy. AIG goes on to say: "The BPL Coverage Section is not implicated by affirmative claims such as those asserted by the Bank in the Action. Moreover, the Counterclaims are brought against the Borrower and Mr. deBerardinis, neither of whom is an Insured under the Policy. Accordingly, there has not been a Claim made against an Insured in this matter, and the BPL Coverage Section is not currently implicated by this matter." Nevertheless, AIG agreed to accept the notice as a notice of circumstances that may subsequently give rise to a claim. These statements appear in the section of the letter labeled "Coverage Analysis." In the letter, AIG does not quote the definition of "Defense Costs" or any portion of it.

26. On May 24, 2017, five days after it was filed, Hilltop provided AIG with a copy of the first pleading containing the Guarantors' counterclaims and requested a coverage determination from AIG.

27. On June 16, 2017, AIG acknowledged receipt of the Guarantors' counterclaims

against PCB and supplemented its November 15, 2016 letter. In its "Supplemental Coverage Analysis," AIG accepted the counterclaims as a claim under the Policy, and "reiterate[d]" that "any legal fees and costs or other amounts incurred in the prosecution of the Bank's claims in the Action are not covered . . . ." With respect to defense of the counterclaims, those fees and costs will "have to be allocated . . . ," according to AIG. But AIG did not explain how the allocation will work, who will do it, or when it will occur. Although AIG references "Defense Costs," it did not quote the language or advise its insureds that it intended to use the words "resulting solely" to deny all hybrid or mixed attorneys' fees and expenses. Apparently, unless the word "counterclaim" appeared in the billing entry, AIG did not intend to permit reimbursement, but it did not share this undisclosed requirement with its insureds. In addition, AIG did not disclose that that it sought to pay only "reasonable and necessary" attorneys' fees and expenses. Based on its later course of conduct and failure to reserve rights on this issue, among other things, Hilltop considers the issue of reasonable and necessary, as applied to the underlying legal fees and expenses, waived.

28.     On September 19, 2017, AIG's coverage counsel and Hilltop's defense counsel in the Guarantors Lawsuit participated in a telephone conference to discuss the status of the counterclaims.

29.     On January 23, 2018, Hilltop's defense counsel in the Guarantors Lawsuit provided AIG's coverage counsel with an update on the counterclaims and status of the Guarantors Lawsuit.

30.     On March 29, 2018, and March 30, 2018, Hilltop's defense counsel corresponded with AIG's coverage counsel regarding the status of the counterclaims.

31.     On July 12, 2018, Hilltop's defense counsel provided AIG with an update on the counterclaims and status of the Guarantors Lawsuit.

32.     On October 10, 2018, Hilltop's defense counsel updated AIG's coverage counsel

on the Guarantors Lawsuit including the counterclaims.

33. In January 2019, Hilltop informed AIG that Hilltop had incurred between $5-6 million in defense costs to date. Further, Hilltop proposed that the parties come to an agreement as to the allocation and payment of covered Defense Costs. AIG did not respond.

34. In March 2019, again, Hilltop again attempted to secure an agreement with AIG regarding payment of covered Defense Costs, but AIG rejected Hilltop's proposal and failed to present a counteroffer.

35. Hilltop continued to push for an agreement with AIG. On March 28, 2019, April 3, 2019, and April 25, 2019, Hilltop requested an update from AIG regarding its determination of payment of covered Defense Costs, but AIG continued to ignore Hilltop's requests.

36. On November 7, 2019, AIG acknowledged receipt of the first pleading naming PCB and Sam Wooten in the Teekell Lawsuit and confirmed it constituted a claim under the Policy.

37. On November 22, 2019, Hilltop provided AIG with attorneys' fees invoices reflecting the Defense Costs incurred by Hilltop for both the Guarantors Lawsuit as well as the Teekell Lawsuit.

38. On July 23, 2021, over a year and eight months later, AIG provided its initial analysis of the attorneys' fees invoices.

39. Despite having sufficient time to conduct a thorough evaluation, AIG's analysis of the attorneys' fees invoices to determine covered Defense Costs included a simple word search of each attorneys' fee invoice for the word "counterclaim." As discussed above, AIG never informed Hilltop or its attorneys that such a word would be required to seek reimbursement. In fact, AIG admits that it did not tell defense counsel to use the word "counterclaim" in any fee entry related to defense of the counterclaims. AIG's investigation was, and continues to be, both inadequate and

untimely. AIG indicated it would recognize $535,423.61 in covered Defense Costs related to the Guarantors Lawsuit and $203,440.59 in covered Defense Costs related to the Teekell Lawsuit for a total of $738,864.20, an amount conveniently within the Retention.

40. Despite all of the communications over the preceding five years, AIG never explained to its insureds that it intended to use the language "resulting solely" from the definition of Defense Costs to deny reimbursement of all hybrid or mixed fees and expenses, and it never explained to its insured how it would use that language. Over the same period of time, it never reserved its rights as to any limitations in the definition of Defense Costs.

41. AIG admits that in denying all hybrid or mixed attorneys' fees and expenses, it is depriving Hilltop of the reimbursement of some fees and expenses attributable to defense of the counterclaims, but AIG insists that its coverage interpretation is correct. Hilltop disagrees, demonstrating that under Texas law, further allocation is both appropriate and possible. Although Hilltop believes that the definition of Defense Costs is unambiguous, if the Court disagrees, Hilltop hereby pleads ambiguity in the alternative.

42. As a result of AIG's insufficient analysis of the attorneys' fees invoices, Hilltop was forced to conduct its own review. Contrary to AIG's cursory investigation, Hilltop's analysis of the attorneys' fees invoices incorporated a line-by-line review of each entry of each invoice as well as extensive evaluation of filed pleadings and exchanged discovery to determine whether the work reflected in each entry did in fact go towards the defense of the counterclaims.

43. On October 27, 2021, Hilltop provided its initial analysis of the attorneys' fees invoices to AIG. Hilltop's independent review of the attorneys' fees invoices revealed that Hilltop had incurred millions in covered Defense Costs, well over the $750,000 Retention.

44. Hilltop continues to incur attorneys' fees in the Guarantors lawsuit, and as of May

31, 2023, Hilltop contends that it has incurred a total of $7,023,365.67 in covered Defense Costs.

45. AIG now admits that the Retention has been met. Nevertheless, AIG has recognized only $314,336.15 in covered Defense Costs, made in three payments to Hilltop. The first payment of $109,077.22 was made on February 15, 2023. The second payment of $179,428.99 was made on April 12, 2023. The third payment of $25,829.94 was made on September 1, 2023. At least one of these payments was not made within 90 days of receiving the itemized invoices. According to AIG, these payments include covered Defense Costs from both the Guarantors Lawsuit and the Teekell Lawsuit. In fact, AIG has paid all outstanding Defense Costs in the Teekell Lawsuit and denied the vast majority of the Defense Costs in the Guarantors Lawsuit, even though much of the legal work was identical. AIG never contested the reasonableness or necessity of these legal fees and expenses before issuing these payments.

46. Despite receiving Hilltop's calculations based on a more reliable and thorough investigation, and despite the fact that Hilltop has continued to incur significant legal fees and expenses defending these claims, AIG continues to unreasonably delay and/or refuse payment of covered Defense Costs. Meanwhile, Hilltop has paid the total amount of attorneys' fees and costs incurred in the Guarantors Lawsuit and in the Teekell Lawsuit.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

47. Hilltop incorporates each and every allegation set forth above.

48. The Policy is a valid and enforceable contract.

49. Hilltop has at all times fully performed its obligations under the Policy and paid the required premiums.

50. AIG committed a material breach of the Policy by failing and refusing to pay for

the covered Defense Costs.

51. In addition, or in the alternative, AIG committed a material breach of the Policy by failing to advance Defense Costs no later than ninety days after receiving itemized bills.

52. As a result of these material breaches, Hilltop has been damaged.

## COUNT II
## VIOLATIONS OF TEXAS PROMPT PAY OF CLAIMS ACT

53. Hilltop incorporates each and every allegation set forth above.

54. Under the Texas Insurance Code, AIG had a duty to investigate and pay Hilltop's claims in a timely manner. *See* Tex. Ins. Code Ann. §§ 542.051-.061.

55. AIG violated Section 542 of the Texas Insurance Code by not timely: (1) accepting or rejecting the claim [542.056(a)]; (2) stating the reasons for any denial [542.056(c)]; and (3) paying the claim within 60 days after receiving all items, statements and forms reasonably requested [542.058(a)].

56. In addition, if Hilltop establishes a breach of the Policy, Hilltop is entitled to Texas Prompt Pay damages pursuant to Section 542.060 and 542.061.

57. As a result, Hilltop has been damaged and continues to be damaged by AIG's conduct.

## COUNT III
## UNFAIR OR DECEPTIVE INSURANCE PRACTICES
## - VIOLATIONS OF TEX. INS. CODE 541

58. Hilltop incorporates each and every allegation set forth above.

59. AIG'S conduct, as more fully described above, constitutes a violation of Chapter 541 of the Texas Insurance Code.

60. AIG is contractually obligated under the Policy to pay the covered Defense Costs, subject only to the Retention and applicable Policy limits.

61. AIG has engaged in a pattern of unfair and deceptive conduct aimed at delaying, minimizing, and avoiding its obligations to pay the covered Defense Costs incurred by Hilltop, and depriving Hilltop of the benefits and protection of the insurance coverage for which substantial premiums were paid.

62. AIG's conduct constitutes a violation of Chapter 541 of the Texas Insurance Code by engaging in one or more of the following prohibited acts:

    a. misrepresenting to Hilltop a material fact or policy provision relating to coverage at issue [541.060(a)(1)];

    b. failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of (A) a claim with respect to which AIG's liability has become reasonable clear [541.060(a)(2)];

    c. failing to promptly provide Hilltop a reasonable explanation of the basis in the policy, in relation to facts or applicable law, for AIG's denial of the majority of the Defense Costs in the Guarantors Lawsuit [541.060(a)(3)];

    d. failing within a reasonable time to (A) affirm or deny coverage [541.060(a)(4)];

    e. refusing to pay a claim without conducting a reasonable investigation with respect to the claim [541.060(a)(7)];

    f. misrepresenting an insurance policy by: (1) making an untrue statement of material fact [541.061(1)]; (2) failing to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made [541.061(2)]; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact [541.061(3)]; and (4) failing to disclose a matter required by law to be disclosed [541.061(5)].

63. As a result of the foregoing violations of chapter 541 of the Texas Insurance Code, Hilltop has suffered substantial damages recoverable pursuant to Section 541.152(a) of the Texas Insurance Code.

64. AIG's unfair and deceptive conduct, as described above, has been undertaken knowingly, and is not the result of an isolated mistake of fact or law, honest error of judgment, or

negligent act. AIG's conduct reflects a concerted and deliberate effort to mislead Hilltop regarding payment of Defense Costs and deprive Hilltop of the contractual benefits for which it paid substantial premiums. AIG's misconduct warrants an award of treble damages for the purpose of deterrence and/or punishment pursuant to Tex. Ins. Code § 541.152(b).

## COUNT IV
## ATTORNEYS' FEES AND STATUTORY INTEREST

65. Hilltop incorporates each and every allegation set forth above.

66. Hilltop was forced to engage legal counsel in order to redress its losses. Hilltop is entitled to recover its attorneys' fees arising out of these coverage disputes under the Texas Civil Practice & Remedies Code. See Tex. Civ. Prac. & Rem. Code § 38.001(8) (statutory basis for recovery of attorneys' fees in breach of contract case); Tex. Ins. Code Ann. § 541.152 (statutory basis for recovery of attorneys' fees for violation of chapter 541 of the Texas Insurance Code); and Tex. Ins. Code Ann. § 542.060 (statutory basis for recovery of attorneys' fees for violation of Texas Prompt Payment of Claims Act).

67. Additionally, due to AIG's violations of the Texas Prompt Payment of Claims Act, AIG is liable for the interest on the amount of Hilltop's claim at the rate of 18% per year as damages. Tex. Ins. Code Ann. § 542.060.

68. As is customary in the Northern District of Texas, Hilltop anticipates that the issue of attorneys' fees, if applicable, will be decided by the Court on motion after trial pursuant to Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure.

## VIII.   JURY DEMAND

69. Hilltop hereby demands a trial by jury.

## IX. RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Hilltop respectfully requests judgment against AIG as follows:

a. an award of actual damages against AIG for AIG's breach of the Policy;

b. an award of actual damages against AIG for AIG's violations of chapter 541 and 542 of the Texas Insurance Code;

c. interest at a rate of 18% per annum pursuant to Tex. Ins. Code § 542.060;

d. treble damages, pursuant to Tex. Ins. Code § 541.152;

e. attorneys' fees incurred herein plus interest on said fees at the highest rate allowed by law from the date of entry of judgment until paid in full;

f. total costs of the suit herein including pre-judgment and post-judgment interest at the highest rate allowed by law; and

g. for such other and further relief at law and in equity as the Court may deem appropriate.

Respectfully submitted,

 /s/Beverly B. Godbey
Beverly B. Godbey
State Bar No. 02068600
beverly@amystewartlaw.com
Meggan Burchfield
State Bar No. 24038753
meggan@amystewartlaw.com
Beth Kressel Itkin
State Bar No. 24118435
beth@amystewartlaw.com
**AMY STEWART PC**
5307 E. Mockingbird Lane, Suite 425
Dallas, Texas 75206
Telephone: (214) 233-7076
Facsimile: (214) 975-2806

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I do hereby certify that on December 1, 2023, a true and correct copy of the foregoing Plaintiff's Second Amended Complaint was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case.

                                                       By: */s/Beverly Godbey*
                                                                  Beverly Godbey

4891-4424-9408, v. 2